IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Raymond E. King, Inmate No. N54043 ) | |
| ) | |
| Plaintiff, ) | Case No.: 09 CV 1184 |
| ) | Magistrate Judge Sidney I. Schenkier |
| v. ) | |
| ) | |
| Dr. Nathan Chapman, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS DR. NATHAN CHAPMAN, DR. PARTHA GHOSH
AND DR. LADEANE FATTORE-BRUNO's RULE 26(a)(2)
<u>DISCLOSURE OF EXPERT TESTIMONY</u>**

Defendants, DR. NATHAN CHAPMAN, DR. PARTHA GHOSH and DR. LADEANE FATTORE-BRUNO, by their attorneys, Charysh & Schroeder, Ltd., for their Rule 26(a)(2) disclosures of expert testimony, state as follows:

In accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, these defendants identify Dr. Paul Chaiken, D.D.S. as a witness they will use at trial to present evidence under Federal Rules of Evidence 702, 703 and/or 705. Attached as **Exhibit A** is the written report of Dr. Chaiken as required by Rule 26(a)(2)(B). Also attached as **Exhibit B** is Dr. Chaiken's Curriculum Vitae. Dr. Chaiken will render dental and dental (oral) surgery opinions regarding the care and treatment that Raymond King received while incarcerated at Menard Correctional Center and Stateville Correctional Center.

The following treating physicians and dentists will also be used at trial to present testimony, including expert testimony pursuant to Rule 26(a)(2)(C): Dr. Michael Miloro,

Dr. Partha Ghosh, Dr. Nathan Chapman, Dr. LaDeane Fattore-Bruno, Dr. Arthur Funk, Dr. Newbold and Dr. Harry Henderson. It is anticipated these doctors will testify consistent with their deposition testimony and may also provide opinions regarding the reasonableness of the care and treatment provided to plaintiff Raymond King.

                                              Respectfully submitted,

                                              CHARYSH & SCHROEDER, LTD.
                                              By:/s/ John Beribak

CHARYSH & SCHROEDER, LTD.
33 North Dearborn St., Suite 1300
Chicago, Illinois 60602
(312) 372-8338
Michael J. Charysh (ARDC# 6187455)
John J. Beribak (ARDC # 6269405)

## PROOF OF SERVICE BY ELECTRONIC MAIL

    The undersigned attorney certifies that on February 16, 2012, this disclosure was served to all counsel of record by electronic mail.

/s/ John Beribak

# Exhibit A

February 14, 2012

Mr. John Beribak
Charysh & Schroeder, Ltd.
33 N. Dearborn, Suite 1300
Chicago, IL 60602

    Re: Raymond E. King v. Dr. Nathan Chapman et al.
       Case No. 09-C-1184

## *Confidential – Pursuant to Protective Order*

Dear Mr. Beribak:

  I was retained by your firm to offer my opinions on the care provided to Raymond King by Dr. Nathan Chapman, Dr. Partha Ghosh and Dr. Ladeane Fattore-Bruno. As background, I am a doctor of dental surgery (D.D.S.), licensed to practice dentistry and oral surgery in the State of Illinois. I am also licensed by the Northeast Regional Board of Dental Examiners and the American Dental Association of National Board of Examiners. Attached to this report is a copy of my Curriculum Vitae.

  I completed my undergraduate education at Indiana University in 1980. I received my D.D.S. degree from Loyola University School of Dentistry in 1984. In addition to my private dental practice, I am on the medical staff at Northwestern Memorial Hospital. I serve as an assistant professor at Northwestern University Feinberg School of Medicine. I also worked as a consultant to the American Medical Association and as a research associate for the New York University College of Dentistry.

  Included in my Curriculum Vitae is a list of my postgraduate training/continuing education, faculty appointments, honors/awards, professional presentations and professional activities.

  I have practiced in the area of dentistry and dental/oral surgery for over 25 years. In that capacity, I have managed several patients with temporomandibular joint disorder (TMD) and with conditions similar to those of Raymond King.

  To form my opinions in this matter, I reviewed the records supplied to me by the attorneys for Dr. Chapman, Dr. Ghosh and Dr. Fattore-Bruno. Those records include: (a) plaintiff's second amended complaint and the defendants' answers thereto; (b) the medical

Mr. John Beribak
February 14, 2012
-Page Two-

### *Confidential – Pursuant to Protective Order*

records produced by the plaintiff and reviewed by the plaintiff's expert, Dr. Binderman; (c) the plaintiff's deposition testimony; (d) deposition testimony of Dr. Partha Ghosh; (e) deposition testimony of Dr. Fattore-Bruno; (f) deposition testimony of Dr. Nathan Chapman; (g) deposition testimony of Dr. Arthur Funk; (h) deposition testimony of Dr. Michael Miloro; and (i) all reports and supplemental reports of Dr. Arnold Binderman, including all exhibits thereto.

All opinions I formed relating to the care and treatment provided by Dr. Chapman, Dr. Fattore-Bruno and Dr. Ghosh are to a reasonable degree of dental and dental (oral) surgical certainty. It is my opinion that Dr. Chapman, Dr. Fattore-Bruno and Dr. Ghosh complied with the standard of care and acted in a professional manner in all of their treatment of Mr. King for his TMD. This includes all referrals to specialists, all medications prescriptions and all therapy provided to treat Mr. King's TMD. My opinions are based on my education, training, 25 years experience treating patients with TMD and my review of all of materials identified above. There is nothing in the record to suggest that Dr. Chapman, Dr. Fattore-Bruno or Dr. Ghosh were deliberately indifferent to Mr. King's dental or oral surgery needs or that the care of the patient fell below the standard of care for a dentist or doctor treating a patient with TMD.

I reviewed this matter for the purpose of determining whether Dr. Chapman, Dr. Fattore-Bruno and Dr. Ghosh complied with the standard of care in treating Mr. King. I did not review the record to offer opinions regarding the care provided by the other defendants. Specifically, I was asked to review the matter for the following issues: (a) Whether Mr. King received appropriate treatment for his TMD at Menard Correctional Center from 2004 to 2007, including appropriate referrals to specialists; (b) Whether Mr. King's referral to an oral surgeon to evaluate whether he was a candidate for a TMJ replacement surgery was appropriate and timely; (c) Whether Mr. King received appropriate treatment at Stateville Correctional Center prior to his surgery; and (d) whether Mr. King received appropriate treatment, including physical therapy, at Stateville following his surgery.

My opinions and bases thereof are as follows. All of the treatment provided by Dr. Chapman at Menard was appropriate. The plaintiff criticizes the delay at Menard in referring Mr. King to a TMJ specialist and referring him for a CT scan and MRI of his TMJ. The records make clear that all such ultimate recommnedations for referrals at Menard must be made by the medical director, and not Dr. Chapman. Any criticism for failure to refer is inaplicable to Dr. Chapman.

All of Dr. Chapman's conduct was appropriate. Dr. Chapman made appropriate recommendations for referral to outside specialists. Mr. King was prescribed appropriate medications at Menard, including pain medications and muscle relaxants. Mr. King was in possession of a fitted night guard/splint to address his TMD. The records indicate Mr.

Mr. John Beribak
February 14, 2012
-Page Three-

### *Confidential – Pursuant to Protective Order*

King acknowledged the splint was effective. When he complained he was not receiving relief from the splint, he was provided muscle relaxers and referral to a specialist. He confirmed the muscle relaxers were effective.

All of Dr. Chapman's requests to the medical director for referral to an outside specialist were timely and appropriate. When the CT performed on Mr. King showed abnormalities, he was appropriately referred to an outside specialist, Dr. Swanson. Not even Dr. Swanson could determine whether a joint replacement surgery was warranted. An MRI was requested by Dr. Swanson and that MRI was approved by Dr. Feinerman. Dr. Chapman did not control the timing of the MRI.

Once Dr. Chapman was advised by Dr. Swanson that it appeared Mr. King will need TMJ joint reconstruction, Dr. Swanson advised it was a surgery he could not perform and recommended a referral to UIC or Loyola. Efforts to transfer Mr. King were then undertaken in a timely manner. It appears Dr. Feinerman recommended a transfer of Mr. King to Stateville to be evaluated by an oral surgeon to determine whether he was a candidate for TMJ replacement surgery. It should be noted that Dr. Chapman does not and cannot control when outside specialists will see Mr. King. There are also issues outside the control of the medical care providers as to when and how transfer from one prison to the next will take place.

It is my opinion that once Mr. King was transferred to Stateville, he was referred to Dr. Miloro for surgery in a timely manner by Dr. Ghosh. The record shows Mr. King was transferred to Stateville on or around September 19, 2007. Dr. Ghosh was the medical director at Stateville. Just as at Menard, the medical director at Stateville was responsible for requesting referrals and transfers to outside specialists. Mr. King was furloughed to UIC Medical Center within days after his arrival at Stateville. Unfortunately, Dr. Miloro was not yet on staff at UIC and, therefore, they could not provide surgery to Mr. King at that time. The specialists at UIC recommended Mr. King be evaluated by Dr. Mercuri at Loyola Medical Center. They also advised they may have staff available (Dr. Miloro) in 2-3 months to evaluate Mr. King for surgery. They recommended Mr. King be prescribed Tylenol #3 or Tramadol. The records show Stateville medical staff followed the recommendations of the specialists at UIC.

On October 19, 2007, when Mr. King's jaw "locked-up," he was taken to the emergency room at UIC. The response by the Stateville medical staff to this condition was timely and appropriate. Mr. King indicated to the staff at UIC that he dislocated his jaw that day and reduced it himself. They found he had no dislocation and discharged him to Stateville. It appears Mr. King was admitted to the infirmary upon his return to Stateville, but insisted he wanted to go back to his cell. Dr. Ghosh saw Mr. King the next morning and noted improvement. Mr. King was receiving appropriate medications at this time. At no time during his time at Stateville before surgery was Mr. King ignored or refused treatment.

Mr. John Beribak
February 14, 2012
-Page Four-

*__Confidential – Pursuant to Protective Order__*

Dr. Ghosh continued his efforts to have Mr. King referred to a specialist for surgical evaluation. He also referred Mr. King to UIC for a second MRI of the TMJ, which showed "late stage degenerative osteoarthritis." The records show Mr. King showed no signs of pain, facial grimacing or guarding of his face on December 13, 2007. During this time period, Dr. Ghosh was continuing his efforts to have Mr. King seen by Dr. Mercuri at Loyola. Unfortunately, on December 18, 2007, the scheduling office at Loyola informed Dr. Ghosh that Dr. Mercuri was not accepting new patients.

Dr. Ghosh then timely followed-up with UIC to see if they now had a surgeon to evaluate Mr. King. In the meantime, Mr. King continued receiving medications and was referred to the optometry clinic. His vision was good. When Mr. King had complaints of pain while waiting for his return to UIC, he was admitted to the infirmary at Stateville. He was in the infirmary from December 8, 2007, to January 8, 2008. When Mr. King was discharged from Stateville's infirmary, he had no complaints and no immediate distress. During his stay in the infirmary, he received pain medications, muscle relaxers and a mechanical soft diet. He was also evaluated by the dental department at Stateville and the oral surgery department at UIC. All of this treatment was appropriate and reasonable.

Surgery was recommended by UIC on or about February 8, 2008, and Dr. Ghosh approved the surgery. The oral surgeons scheduled the surgery for March 18, 2008. The surgery was a right TMJ arthroplasty and total joint replacement with prosthesis. Upon discharge from UIC, the oral surgery department recommended Mr. King perform opening, closing and clenching exercises of his jaw daily. This was the complete physical therapy recommended by UIC at that time. The recommendation was appropriate and the therapy could be self-performed by Mr. King. Medications and a soft diet were also recommended. Upon Mr. King's return to Stateville, Dr. Ghosh admitted him to the infirmary and ordered appropriate medications and diet.

On March 21, 2008, Mr. King was non-compliant and removed the headband placed around his head and jaw by the specialists at UIC. On or about March 25, 2008, Mr. King returned to UIC for follow-up and suture removal. At that time, there was a notation that he was to receive physical therapy for proper functional healing. No specific therapy was detailed by the doctors at UIC. Mr. King was also instructed to continue his jaw exercises.

The records show Dr. Fattore-Bruno saw Mr. King following his surgery and performed physical therapy. It is my opinion that the therapy was timely and appropriate. The therapy consisted of using tongue depressors to facilitate passive and active opening of the mouth. This type of therapy is appropriate and complied with the standard of care. All of the medications ordered by Dr. Fattore-Bruno prior to surgery were also appropriate. Just as with Dr. Chapman at Menard, Dr. Fattore-Bruno did not have the authority to refer Mr. King to specialists outside

Mr. John Beribak
February 14, 2012
-Page Five-

***Confidential – Pursuant to Protective Order***

of Stateville.

      A record dictated and signed by Dr. Edwards from UIC shows that the oral surgery department at UIC planned to order a therabite for Mr. King – UIC did not instruct Stateville to order the device. While Stateville was waiting for UIC to provide Mr. King with the therabite, the therapy he received was appropriate. When Mr. King ultimately received the therabite from UIC, he was instructed on its use by the specialists at UIC. Further, the device was assembled and demonstrated at UIC and all of Mr. King's questions regarding the device were answered. Mr. King was instructed to use the device four times daily. No additional physical therapy was recommended by the staff at UIC. Dr. Ghosh then instructed the security staff at Stateville, so that Mr. King could use the therabite in his cell.

      Shortly after receiving the therabite, Mr. King stated the device causes his muscles to tighten up and burn. The medical records show Mr. King was not following directions regarding use of the device. The medical staff at Stateville then attempted to provide Mr. King with additional physical therapy. When Mr. King was seen for follow-up by Dr. Rogers at UIC, the recommendations to the medical staff at Stateville were to continue daily exercises with therabite, and continue pain medication, muscle relaxers and warm compresses. This was the extent of the recommendations made by the specialists at UIC. It is my opinion that the recommendations were appropriate and followed at Stateville. Physical therapy was continued at Stateville. There is a physical therapy note indicating poor compliance by Mr. King.

      Based on my education, training, experience and expertise treating patients with TMD, I also agree with the following opinions of Dr. Miloro:

      (a) Dr. Miloro is an expert in the management of TMD, and one of a handful of surgeons in the country who can perform a TMJ total joint replacement;

      (b) Appropriate treatment for TMD includes muscle relaxers, pain medication, bite splints, warm compresses and physical therapy;

      (c) Physical therapy can be done at home and patients with TMD should learn how to perform those exercises by themselves;

      (d) The most practical and beneficial application of physical therapy is home therapy;

      (e) Mr. King's ankylosis and osteoarthritis was caused by the initial fracture of his condyle and his multiple operations;

      (f) The best treatment for Mr. King's condition was joint replacement;

Mr. John Beribak
February 14, 2012
-Page Six-

*<u>Confidential – Pursuant to Protective Order</u>*

    (g) Following joint replacement surgery, there is a period of post-operative morbidity and convalescence with pain and swelling;

    (h) Physical therapy should be instituted after a period of healing following surgery;

    (i) Medications such as NSAIDs and muscle relaxers should be instituted following surgery;

    (j) Treatment by a physical therapist is not required in the overwhelming majority of – if not all – cases following TMJ total joint replacement and patients typically do not see physical therapists. All post-operative physical therapy can be performed by the patient at home by following the instructions given by the surgeon following surgery. All therapy can be performed with the device provided by the surgeon or the hospital where the surgery is performed. Therapy should begin a week or two following surgery;

    (k) Nothing other then a therabite preceded by a moist, heated towel to the jaw (or a shower) is necessary to perform physical therapy;

    (l) If a patient does not have access to a therabite, use of tongue depressors is an appropriate and acceptable substitute form of physical therapy. Tongue depressors essentially function in the same manner as a therabite – they both involve passive exercising;

    (m) A patient can perform tongue depressor physical therapy on his own. Post-operative physical therapy instruction is typically given by the surgeon;

    (n) The goal of the procedure performed on Mr. King was to re-create form and function. Pain reduction is a secondary goal. There is no guarantee after surgery that the patient will have a decrease in pain. Chronic pain will not be amenable to surgery and must be addressed with chronic pharmacological management. Mr. King had chronic pain prior to surgery. Mr. King may be relegated to drug therapy for the rest of his life to address his facial pain;

    (o) The tongue depressor therapy performed by Dr. Fattore-Bruno following surgery was "really appropriate" and acceptable in lieu of the therabite. From Dr. Miloro's review of the therapy rendered by Dr. Fattore-Bruno, she "knows what [s]he's doing;"

    (p) The fact that a patient is complaining of pain post-surgically does not indicate a problem with the post-operative course of treatment;

    (q) The medications prescribed to Mr. King following his surgery were appropriate. The medical staff at Stateville "knows what they're doing" in terms of prescribing muscle relaxants

Mr. John Beribak
February 14, 2012
-Page Seven-

*Confidential – Pursuant to Protective Order*

and use of heat post-surgically;

(r) Mr. King's chronic pain is related to his his initial reported injury from a baseball bat and to the multiple operations on his joint. Despite reconstruction, he is still going to have chronic pain;

(s) No other TMJ surgeries are appropriate for Mr. King and learning to tolerate activities of daily living are important;

(t) Mr. King's pain is from the chronic nature of his condition as opposed to any noncompliance by the health care providers at Stateville;

(u) Due to the chronic nature of Mr. King's TMD, his condition and prognosis would not have been improved had he received the March 2008 surgery at an earlier date;

(v) From the time Mr. King was first seen at UIC, there was no delay in scheduling his surgery; and

(w) 85-90% of patients who have the total joint replacement surgery that was performed on Mr. King suffer from chronic pain thereafter.

Just as reported by Dr. Binderman, my investigation and assessment may continue and my opinions may be supplemented based on additional materials provided to me, including the transcript from Dr. Binderman's anticipated deposition. Just like Dr. Binderman, I also anticipate using demonstrative exhibits both at deposition and trial to illustrate and explain the anatomy at issue in this case.

My fee is $385 per hour for record review and other preparation for testimony. My fee is $500 per hour for deposition and trial testimony. In the past four years, I have testified at deposition or trial in the following matters: None.

Sincerely,

Paul J. Chaiken, D.D.S.

# Exhibit B

Curriculum Vitae

**Paul J. Chaiken, D.D.S.**  5953 North Milwaukee Avenue
Chicago, Illinois 60646
Phone   773/ 774-1272
Fax     773/ 774-8482
e-mail  drchaiken@aol.com

Education
  Indiana University, Bloomington, IN. 1977-1980
  Loyola University School of Dentistry, Maywood, IL. 1980-1984
    Doctor of Dental Surgery 1984

Postgraduate Training – Continuing Education
  The Dawson Academy, Peter Dawson, DDS, St. Petersburg, FL
  Seattle Institute for Advanced Dental Education, Frank Spear, DDS, Seattle, WA.
  Center for Esthetic Excellence, Buddy Mopper, DDS, Chicago, IL.
  Pride Institute- Leadership and Management Series, Larkspur, CA.
  Behavioral Dentistry Workshops- Aalt Brouwer, PhD, Prescott, AZ
  Scottsdale Center for Dentistry, Frank Spear, DDS, et al, Scottsdale, AZ
  Core Dentistry, Jeff Rouse, DDS, San Antonio, TX

Licensure
  State of Illinois Dental License
  Northeast Regional Board of Dental Examiners
  American Dental Association of National Board of Examiners
  Advanced Cardiac Life Support Certification

Honors
  Fellowship Award – American College of Dentists 2000
  Fellowship Award - Academy of General Dentistry 1994
  Research Award - Block Drug Company 1984

Faculty Appointments
  Assistant Professor of Otolaryngology, Division of Dental Surgery,
  Northwestern University Medical School 2000-Current
  Assistant Clinical Professor, Department of Oral Medicine and Oral Diagnosis,
  Northwestern University Dental School 1995-2000
  Research Associate, New York University College of Dentistry 2008-2010
  Faculty Member, Spear Education at Scottsdale Center for Dentistry 2008- current

Hospital Staff Appointments
  Medical Staff, Department of Dental Surgery, Northwestern Memorial Hospital  1998- current

Presentations
  "Smile Design and It's Relationship to Anterior Esthetics",  Chicago Dental Society,
    Midwinter Meeting 2003
  "Occlusion and TMJ Dysfunction", Northwestern Memorial Hospital 2008
  "Screening for TMJ Dysfunction", Chicago Dental Society, Midwinter Meeting 2009
  "Dental Sleep Medicine", Northwestern Memorial Hospital, 2011

**Professional Activities**
   **Full time practice restorative and esthetic dentistry**
   **Member - Chicago Academy of Interdisciplinary Dentofacial Therapy**
   **Peer Review Board – Chicago Dental Society**
   **Program Chairman – Chicago Academy of Interdisciplinary Dentofacial Therapy**
   **Consultant – American Medical Association, consumer books**
   **Attending Dentist- Illinois Foundation of Dentistry for the Handicapped**
   **Clinical Evaluation Panel (ACE)- American Dental Association**
   **Member- American Dental Association, Illinois State Dental Society,**
       **Chicago Dental Society, American Academy of Cosmetic Dentistry**
       **American Academy of Dental Sleep Medicine**