# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND E. KING, | )
 )
 ) Case No. 09 C 1184
 )
 ) Magistrate Judge Sidney I. Schenkier
 )
 )
 )
 ) |
| Plaintiff, | |
| v. | |
| CHAPMAN, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER[1]

On February 24, 2009, Raymond E. King brought this action under 42 U.S.C. § 1983 against certain medical and dental providers employed by or under contract with the prisons in which he was incarcerated, alleging that they were deliberately indifferent to his serious medical needs stemming from his temporomandibular joint ("TMJ") disorder ("TMD"), in violation of the Eighth Amendment's prohibition on cruel and unusual punishments. On February 1, 2013, defendants moved for summary judgment; the defendants who were employed by the State of Illinois filed one motion, and the defendants who were employed by Wexford Health Sources filed another. On December 16, 2013, the Court granted in part and denied in part both motions. *King v. Chapman*, 4 F. Supp. 3d 1017 (N.D. Ill. 2013). After a continuance sought by all parties and granted by the Court on March 28, 2014 (doc. # 303), trial is now set to begin on January 26, 2015.

In its opinion on summary judgment, this Court held that the only remaining claim for trial as to defendant Steven Newbold, D.D.S., is whether he was deliberately indifferent to plaintiff's serious medical needs by delaying in providing him with a new night guard for his

---

[1]On January 24, 2011, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the case was assigned to this Court for all proceedings, including the entry of final judgment (doc. # 137).

TMD. *King*, 3 F. Supp. 3d at 1034-35. Dr. Newbold now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (doc. # 321), on the basis that the sole remaining claim against him is barred by the statute of limitations, an affirmative defense raised in defendants' answer to plaintiff's second amended complaint.[2] The motion for judgment on the pleadings is fully briefed, and, for the reasons set forth below, we grant the motion.

I.

When deciding a motion for judgment on the pleadings under Rule 12(c), we are not limited to the allegations in the plaintiff's complaint. Rather, "[w]e may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). Thus, we begin with a review of the undisputed facts about Dr. Newbold as set forth in this Court's opinion on summary judgment. *King*, 4 F. Supp. 3d at 1023-26.

Dr. Newbold, a part-time dentist at Menard, examined Mr. King on August 26, 2004, and multiple times in September 2004, when Mr. King informed him that he had pain and swelling in his right TMJ and that his acrylic dental mouth piece (also, "night guard" or "mouth guard") was broken. Dr. Newbold noted slight swelling and tenderness in the TMJ area and deviation in Mr. King's jaw upon closing, but he found no joint noises, normal range of motion, and that the area appeared solid and stable. After spotting a possible hairline fracture in Mr. King's jaw, Dr. Newbold ordered additional x-rays, which confirmed no fracture, but possible slight narrowing of joint space on the right jaw. Dr. Newbold ordered a new mouth guard for Mr. King in September 2004, but he did not take impressions for it at that time.

---

[2]A motion to dismiss based on the affirmative defense that the statute of limitations bars the claim is properly raised in a motion under Rule 12(c). *Ennenga v. Starns*, 677 F.3d 766, 772-73 (7th Cir. 2012) (citing Fed. R. Civ. P. 12(h)(2)); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012).

2

Mr. King also complained to Dr. Newbold of TMJ pain on November 19, 2004, but it is unclear what actions, if any, Dr. Newbold took at that point. On January 25, 2005, Mr. King filed a grievance complaining that he was not receiving treatment for intense pain and swelling in his jaw. Following the grievance, Mr. King had an appointment with Dr. Newbold on February 18, 2005, at which Mr. King reported that his jaw had been popping and that he needed a new night guard to help with his pain. Dr. Newbold prescribed Tylenol 3 for pain and set up an appointment for plaintiff to be fitted for a night guard. Dr. Newbold took impressions to fit Mr. King for the night guard on March 4, 2005, and provided him with the night guard on April 1, 2005. On April 15, 2005, Dr. Newbold saw plaintiff and noted that the night guard fit well and did not need adjusting.

After this time, Mr. King primarily saw Dr. Chapman, the dental director of Menard, for his TMJ disorder, except for three additional occasions on which he saw Dr. Newbold. Dr. Newbold saw Mr. King for his bi-annual dental exam on June 16, 2006, at which Mr. King complained of unresolved TMJ pain. Dr. Newbold next saw Mr. King on April 26, 2007, after a CT scan revealed multiple bony fragments in the TMJ joint space. At that time, Dr. Newbold renewed Mr. King's prescription for Prednisone and Robaxin and noted that an oral surgeon consultation had been ordered. Dr. Newbold met with plaintiff one more time, on May 10, 2007, and prescribed additional medication for his pain.

Based on these facts, we held that Mr. King established a genuine issue of material fact as to whether Dr. Newbold's alleged delay in providing a new night guard constituted deliberate indifference to his serious medical needs. *King*, 4 F. Supp. 3d at 1035. Mr. King's remaining complaints against Dr. Newbold, however, fell short of creating a triable issue. *Id.*

3

## II.

The parties do not dispute that Section 1983 suits in Illinois have a two-year statute of limitations, *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013), and that federal law governs the accrual date of a claim under Section 1983, *Moore v. Burge*, -- F.3d --, No. 13-3301, 2014 WL 5870675, at *2 (7th Cir. Nov. 13, 2014). Dr. Newbold contends that the remaining claim against him is barred by the statute of limitations because it arises from his alleged delay in providing Mr. King with a mouth guard between the months of August 2004 and April 2005, more than two years before plaintiff filed his complaint on February 24, 2009 (doc. # 321: Newbold Mot. for J. on the Pleadings at 4). Specifically, Dr. Newbold argues that Mr. King's claim against him accrued either in November 2004, when Mr. King alleges Dr. Newbold told him that he did not have the expertise to treat TMJ disorder and would not refer plaintiff to a TMJ specialist, or on April 1, 2005,[3] when Mr. King received the new mouth guard (*Id.* at 4-6). By contrast, Mr. King contends that his claim against Dr. Newbold accrued in April 2007, when he learned that his jaw bone was fragmented and he would need a joint transplant (doc. # 326: Pl.'s Resp. at 2). Mr. King claims that the delay in obtaining the night guard was a cause of the jaw fragmentation and resultant need for surgery (*Id.* at 3).[4]

### A.

In support of their arguments, both parties rely on *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013), which held that a Section 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues – *i.e.*, the statute of

---

[3] Both Dr. Newbold and Mr. King misstate the date Mr. King received the night guard. The undisputed fact, as set forth in this Court's prior opinion, is that Dr. Newbold provided Mr. King with the mouth splint on April 1, 2005. *King*, 4 F. Supp. 3d at 1024.

[4] We note that the applicable limitations period is tolled while a prisoner exhausts the administrative grievance process. *Turley*, 729 F.3d at 651. However, Mr. King does not argue that if his cause of action accrued as of April 2005 or earlier, tolling would render timely his complaint that he first filed in February 2009.

limitations starts to run – "when the plaintiff knows of his physical injury and its cause . . . even if the full extent or severity of the injury is not yet known." *Id.* at 768. Plaintiff argues that the statute of limitations began to run in April 2007, because that is when he discovered "the physical injury he suffered as a consequence of Dr. Newbold's deliberate indifference[, which] was the fragmentation of his jaw bones requiring a jaw transplant" (Pl.'s Resp. at 3). Dr. Newbold, by contrast, argues that Mr. King's claim against him accrued in April 2005, because Mr. King was aware then of the physical injury allegedly caused by Dr. Newbold's failure to get him a night guard earlier, which Dr. Newbold describes as "the pain [Mr. King claims was] caused by the TMJ disorder and the related pain and swelling of that joint" (Newbold's Mot. at 5).

Mr. King contends that the holding in *Devbrow* supports his contention that his relevant physical injury was the fragmentation of his jaw and not the pain and swelling he suffered years earlier. In *Devbrow*, the plaintiff alleged that the defendants had unconstitutionally delayed ordering a biopsy for him, which prevented a diagnosis of prostate cancer until after it had metastasized. 705 F.3d at 769. The Seventh Circuit held that the limitations period did not commence when the plaintiff obtained the biopsy (which showed a precursor to prostate cancer), but six months later, when he was diagnosed with prostate cancer, because at the time of the biopsy, the plaintiff only had a claim for probabilistic future harm or nominal damages, while he first learned of his concrete physical injury – cancer – six months later. *Id.*

We conclude that *Devbrow* supports Dr. Newbold's contention that Mr. King's claim against him accrued long before April 2007. Mr. King's discovery of his jaw fragmentation in April 2007 did not mark the first actual physical injury he claims was the result of the delay in receiving the mouth guard. Plaintiff's alleged pain and suffering due to the delay in receiving a

5

night guard from Dr. Newbold did not constitute probabilistic future or nominal harm; it was a concrete, physical injury. It is well-settled that "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *see also Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference"). Indeed, in our opinion on summary judgment, we held that Dr. Newbold's alleged delay in providing Mr. King with a night guard could constitute deliberate indifference due to the seriousness of Mr. King's pain during the time period he did not have his night guard and the ease with which Dr. Newbold could have provided him with a night guard to lessen his pain. *King*, 4 F. Supp. 3d at 1034-35 (quoting *McGowan*, 612 F.3d at 640).[5]

A plaintiff's claim accrues "[o]nce a plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury . . ." *Koch v. Gregory*, 536 F. App'x 659, 660 (7th Cir. 2013) (internal quotations and citations omitted) (holding that the plaintiff's claim accrued when he knew that the defendants were forcibly administering medication to him that was harmful and unnecessary). Thus, we agree with Dr. Newbold that Mr. King claims to have suffered a concrete, physical injury -- severe pain and swelling -- during the period that Dr. Newbold allegedly delayed obtaining a night guard for him. It is during that time -- between August 2004 and April 2005 -- that Mr. King knew that Dr. Newbold's actions or inaction were harmful to him, and thus it is during that time that his claim against Dr. Newbold accrued.[6]

---

[5]Further, we note that Mr. King's attorney agreed that Mr. King would have had a claim for deliberate indifference against Dr. Newbold based on the alleged serious pain he experienced during the period when his night guard was delayed, even had the receipt of the night guard completely resolved his TMJ issues (doc. # 325: 10/23/2014 Hearing Tr. at 12).

[6]Mr. King also contends that his claim against Dr. Newbold could not have accrued until he learned from his expert witness that his jaw fragmentation and need for surgery was caused by the delay in providing the night

6

## B.

In the alternative to his contention that his physical injury first occurred -- and thus his claim accrued -- in April 2007, Mr. King argues that the pain and swelling he suffered in 2004 and 2005 was too trivial to trigger the statute of limitations as to his deliberate indifference claim against Dr. Newbold. Rather, plaintiff contends that his claim did not accrue until April 2007, because that is when he discovered that his injury was "serious enough to warrant the expense of a precomplaint investigation" (Pl.'s Resp. at 7, quoting *Goodhand v. United States*, 40 F.3d 209, 213 (7th Cir. 1994)). We disagree.

Mr. King's behavior in 2004 and 2005 shows that he did not deem the pain he allegedly experienced to be merely "trivial." Mr. King complained about pain to Dr. Newbold when he saw him in August, September, and November 2004. And, on January 25, 2005, Mr. King filed a grievance about what he said was intense pain and swelling in his jaw. Mr. King thus asserted the kind of intense pain that constituted a real and tangible injury. Further, Mr. King alleged that his severe pain would have been eased if he had been provided with a night guard. The pain Mr. King allegedly suffered in the absence of the night guard was severe enough to support the denial of summary judgment as to Dr. Newbold. It also was severe enough physical injury to trigger the running of the statute of limitations as to Mr. King's claim against Dr. Newbold.

Dr. Newbold's alleged action or (more precisely) inaction in providing a mouth guard to plaintiff occurred during the period between August 2004 and April 1, 2005. Mr. King does not contend that his remaining claim against Dr. Newbold is based on any alleged actions or inaction taken by Dr. Newbold after April 1, 2005, when Mr. King received the night guard. As

---

guard (Pl.'s Resp. at 5, 7). However, "[i]t is immaterial that he was unaware that the defendants' conduct was illegal;" once Mr. King knew that Dr. Newbold's alleged delay in obtaining the night guard had harmed him, "others -- lawyers, for example -- can tell him if he has been wronged, and he need only ask." *Koch*, 536 F. App'x at 660. (internal quotations and citations omitted).

"[l]iability is defendant-specific," *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013), any alleged illegal actions or inaction against Mr. King by other defendants after that date does not extend the limitations period as to Mr. King's claims against Dr. Newbold. Thus, the accrual date of Mr. King's claim against Dr. Newbold is no later than April 1, 2005, which is the date Mr. King received the night guard and thus marked the last date of Dr. Newbold's failure to act.

## CONCLUSION

For the foregoing reasons, we grant Dr. Newbold's motion for judgment on the pleadings (doc. # 321). All claims against Dr. Newbold, the only remaining defendant who was employed by the State of Illinois, are dismissed.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: December 5, 2014**